**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| JEWAN A. BROWN, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | No. 1:05-cv-656-SEB-VSS |
| ) | |
| ED BUSS, Superintendent, ) | |
| ) | |
| Respondent.¹ ) | |

**Entry Discussing Petition for Writ of Habeas Corpus**

A federal court may issue a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) only if it finds the applicant "is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* In this case, petitioner Jewan Brown ("Brown") has failed to make such a showing. Accordingly, his petition for a writ of habeas corpus must be **denied.** This conclusion rests on the following facts and circumstances:

1.  Brown was convicted in an Indiana state court of one count of murder and of one count of conspiracy to commit murder. His convictions were affirmed on appeal in *Brown v. State,* 738 N.E.2d 271 (Ind. 2000)(*Brown I*), though in that proceeding his sentences were vacated with instructions that they be reimposed to be served concurrently. The evidence pertinent to his offenses was summarized as the following:

> Briefly, on July 9, 1997, Ernestine Bonds was carjacked at gunpoint by Webster. Two days later Webster was killed in a strip mall parking lot. Brown, his brother Jermaine, Marco Clark and Robert Bonds, Ernestine's son, were charged with the murder. All but Jermaine were tried in the same proceeding. Evidence at trial included the testimony of several eyewitnesses that Brown, Jermaine, Bonds, Clark and possibly others arrived at the parking lot in three different cars. Witnesses stated that after identifying Webster, these individuals approached Webster and shot him. The autopsy identified seventeen gunshot wounds inflicted by bullets fired from two weapons at close range. Witness testimony conflicted as to who fired the shots. Brown was convicted of murder and conspiracy to commit murder.

---

¹The petitioner's current custodian, named in his official capacity only, is **substituted** as the respondent.

*Id.* at 272. The trial court's denial of Brown's petition for post-conviction relief was affirmed on appeal in *Brown v. State,* No. 49A05-0402-PC-109 (Ind.Ct.App. February 14, 2005) (*Brown II*).

2. Review of Brown's habeas action is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lambert v. McBride,* 365 F.3d 557, 561 (7th Cir. 2004). Under the AEDPA, if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent, or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d)(1), (2); *Early v. Packer,* 537 U.S. 3, 7-8 (2003); *Lambert,* 365 F.3d at 561.

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 125 S. Ct. 1432, 1438-39 (2005) (internal citations omitted).The Seventh Circuit has explained that the "unreasonable application" prong of § 2254(d)(2) "is a difficult standard to meet," meaning

> "something like lying well outside the boundaries of permissible differences of opinion." *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002). We have held that under this criterion, habeas relief should not be granted if the state court decision can be said to be one of several equally-plausible outcomes. *Boss v. Pierce,* 263 F.3d 734, 742 (7th Cir. 2001).

*Jackson v. Frank,* 348 F.3d 658, 662 (7th Cir. 2003). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002)). Prior to the enactment of AEDPA in 1996, federal courts, on habeas, made independent determinations regarding the constitutionality of state court rulings. After AEDPA, that is no longer the case:

> [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Williams v. Taylor,* 529 U.S. 362, 411 (2000).

3.  Brown seeks habeas relief based on his claims that: (1) the evidence failed to support his convictions; (2) trial counsel was ineffective for failing to object to the trial court's instruction on conspiracy; (3) appellate counsel was ineffective for failing to challenge the same instruction on direct appeal; and (4) the prosecutor committed misconduct by presenting perjured testimony from Jermaine Brown. Brown also seeks an evidentiary hearing.

4.  Although Brown seeks an evidentiary hearing as to aspects of his habeas claims, such a proceeding is only necessary when a more extensive factual record must be compiled to decide an issue. *See Newell v. Hanks*, 283 F.3d 827, 838 (7th Cir. 2002). That is not the case here. Accordingly, his motion for an evidentiary hearing filed on August 5, 2005, is **denied.**

5.  Brown's first habeas claim is that there was insufficient evidence to support his convictions. This claim was presented and rejected in *Brown I*.

   a.  Prior to the AEDPA, a challenge to the sufficiency of the evidence was analyzed in a federal habeas proceeding by determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. A federal habeas court is not entitled to reweigh the evidence under the guise of assessing its sufficiency. *Jackson,* 443 U.S. at 319. On the contrary, a federal habeas corpus court must presume that the jury resolved all reasonable inferences in the State's favor. *Id.*, 443 U.S. at 326; *Willard v. Pearson,* 823 F.2d 1141, 1150 (7th Cir. 1987). The only appropriate inquiry for this Court under *Jackson*

   > is whether, assuming the jury resolved all disputes in the state's favor and drew all inferences from that evidence, it would have been rational to convict. Not whether we would convict, but whether thoughtful people could convict.

   *Branion v. Gramly,* 855 F.2d 1256, 1266 (7th Cir. 1988).

   b.  Brown claims in his habeas petition that the evidence presented at trial is insufficient to support his convictions for murder and conspiracy to commit murder. His specific contention regarding this claim is that no rational trier of fact could have found the facts needed to determine that he was guilty of either murder or conspiracy to commit murder beyond a reasonable doubt.

   c.  With respect to Brown's conviction for murder, the Indiana Supreme Court noted that there was testimony that Brown was seen with a .38 caliber revolver the day of the murder, that a bullet recovered from the victim's head was fired from a .38 caliber revolver that was recovered near the parking lot, that Jermaine testified that

Brown fired the first shot into Webster's head, that Shawntae Kelly testified that on the day of the shooting she heard Brown tell someone on the phone that he had shot someone and that an eyewitness testified that she saw the driver of a purple car shoot Webster. Brown drove his girlfriend's purple car on the day of the shooting. *Brown I,* at 1158.

      d.      As to the conspiracy offense, the Indiana Supreme Court noted that:

> Ritchey testified that Brown and Bonds had approached him the day before the shooting looking for the man who had carjacked Bond's mother. Brown told Ritchey that the carjacker would "get burned" which Ritchey stated meant to get "shot." On the day of the shooting, Bonds received a page and stated, "Revco, lets go." A Revco store was among the stores bordering the parking lot where Webster was killed. Brown arrived at the parking lot, which was the overt act charged in the information, before Bonds and the others. Finally, several witnesses testified that when Webster walked out of the store toward his car, someone in the group stated, "There [he] is." The group then approached Webster and someone started firing. This is substantial evidence of probative value from which a reasonable jury could conclude that Brown and the others acted pursuant to a prearranged plan to locate and kill Webster, which is sufficient evidence of a conspiracy to commit murder.

*Brown I,* at 1159.

      e.      Brown has not shown by clear and convincing evidence, nor by any evidence at all, that the above factual findings are not correct. The findings of fact are therefore accepted for the purpose of this proceeding, and no relief or re-determination of the facts is available to Brown under § 2254(d)(2). See *Harding v. Walls,* 300 F.3d 824, 828 (7th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1) and explaining that courts refer to (e)(1) for the petitioner's burden of proof when that petitioner tries to make a (d)(2) showing of unreasonable state court factual determinations).

      f.      Under the *Jackson* standard, the evidence was sufficient to support Brown's convictions. The Indiana Supreme Court's assessment of the sufficiency of the evidence provided Brown and the State of Indiana with fair process and constituted reasoned, good-faith decision-making when applying *Jackson's* "no rational trier of fact" test. The determination by the Indiana Supreme Court that the evidence was sufficient thus did not run afoul of the AEDPA standard as expressed in 28 U.S.C. § 2254(d)(1), and hence Brown is not entitled to relief based on this first claim.

      6.      Brown's next two claims are that he was denied the effective assistance of counsel.

a. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington,* 466 U.S. 668, 684 (1984). For a petitioner to establish that her "counsel's assistance was so defective as to require reversal" of a conviction or a sentence, he must make two showings: (1) deficient performance that (2) prejudiced his defense. *Id.* at 687.

b. With respect to the prong of deficient performance, the Supreme Court has recently "declined to articulate specific guidelines for appropriate attorney conduct and instead [ ] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith,* 123 S. Ct. 2527, 2535 (2003) (quoting *Strickland,* 466 U.S. at 688). The reviewing court must determine "whether counsel's assistance was reasonable considering all the circumstances." *Strickland,* 466 U.S. at 688. The defendant's burden is considerable, because "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.,* 466 U.S. at 689 (citing *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)). This presumption is "that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

c. Even if the petitioner shows counsel's performance was deficient, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Thus, the prejudice prong of *Strickland* requires a petitioner, even one who can show that counsel's errors were unreasonable, to go further and show the errors "actually had an adverse effect on the defense. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Id.* Rather, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

d. The foregoing outlines the straightforward features of *Strickland's* two-prong test. In the context of a case such as Brown's, however, the AEDPA raises the bar, for it has been noted:

> The bar for establishing that a state court's application of the *Strickland* standard was "unreasonable" is a high one: we have stated on prior occasion that "'*only a clear error* in applying *Strickland* would support a writ of habeas corpus,'" *Dixon v. Snyder*, 266 F.3d 693, 700-01 (7th Cir. 2001) (quoting *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997)), because "*Strickland* calls for inquiry into degrees," thereby "add[ing] a layer of respect for a state court's application of the legal standard." *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001) (emphasis added). Accordingly, this Court *is obligated to affirm the district court's decision to deny the writ, so long as the Wisconsin Court of Appeals* "t[ook] the [constitutional standard] seriously and

> *produce[d] an answer within the range of defensible positions."*
> *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000) (emphasis added).

*Murrell v. Frank,* 332 F.3d 1102, 1111-12 (7th Cir. 2003).

7. Each specification of attorney ineffectiveness–both that at trial and in Brown's direct appeal–turns on the prejudice element of *Strickland.* The setting of these specifications was (a) trial counsel's failure to object to a jury instruction, and (b) the failure of appellate counsel to argue in *Brown I* that the trial court committed fundamental error by improperly giving that same instruction.

    a. The Indiana Court of Appeals recognized and applied the *Strickland* standard in *Brown II*. Its decision is entitled to § 2254(d)(1) deference. *Matheney v. Anderson,* 377 F.3d 740 (7th Cir. 2004) (citing *United States ex rel. Bell v. Pierson,* 267 F.3d 544, 557 (7th Cir. 2001) (noting that the AEDPA provides for clear error review of state court *Strickland* adjudications because of the inherent "element of deference to counsel's choices in conducting the litigation" in combination with the "layer of respect" added by 28 U.S.C. § 2254(d)(1))).

    b. The Indiana Court of Appeals concluded that Brown was not prejudiced by trial counsel's failure to object to the trial court's Final Instruction 15D. The Indiana Court of Appeals reached this conclusion because the instructions as a whole instructed the jury that it had to find beyond a reasonable doubt that Brown had agreed to commit murder. *Brown II,* at p. 11. This remedied the error which emerged from a consideration of Final Instruction 15D in isolation. Thus, there was no prejudice in the sense required by *Strickland* in trial counsel's failure to object to Final Instruction 15D. Without prejudice, there was no ineffective assistance of counsel. *Gallo-Vasquez v. United States,* 2005 WL 736261(7th Cir. April 1, 2005) (a showing of prejudice is required to establish the ineffective assistance of counsel).

    c. With respect to the specification of ineffective assistance of counsel in Brown's direct appeal, to establish the *Strickland* prejudice prong, a defendant must show that there is a reasonable probability that appellate counsel's failure to raise an issue would have resulted in the reversal of his conviction or an order for a new trial. *Lee v. Davis,* 328 F.3d 896, 901 (7th Cir. 2003) (for a claim to support relief, there must be a reasonable probability that issues not raised would have altered outcome of appeal). The Indiana Court of Appeals relied on its finding that Brown had not been prejudiced by the giving of Final Instruction 15D to conclude that there was no fundamental error in giving that instruction, and hence no basis for believing that this claim, which was not presented by Brown's counsel in his direct appeal, "'would have been clearly more likely to result in reversal or an order for a new trial.'" *Brown II,* at p. 14 (quoting *Bieghler v. State,* 690 N.E.2d 188, 194 (Ind. 1997)). This conclusion, of course, follows naturally from the earlier conclusion with respect to the giving of the instruction itself.

   d. It is fully evident that the Indiana Court of Appeals "took the constitutional standard seriously and produced an answer within the range of defensible positions." Because this court cannot find that the Indiana Court of Appeals "unreasonably applie[d] [the *Strickland* standard] to the facts of the case," this court is without authority to grant Brown's petition for habeas relief as to his claims of ineffective assistance of counsel. *Murrell v. Frank,* 332 F.3d at 1111 (citing *Bell v. Cone,* 122 S. Ct. 1843, 1850 (2002)).

  8. Brown's final claim in this case is that there was prosecutor misconduct. His contention supporting this claim is that his brother, Jermaine, gave perjured testimony at Brown's trial and that the prosecutor put Jermaine on the stand knowing that he would give the perjured testimony.

   a. *Napue v. Illinois,* 360 U.S. 264 (1959), holds that a state denies a defendant due process by knowingly offering or failing to correct false testimony. A *Napue* claim requires a showing of the falsity and materiality of testimony and the prosecutor's knowledge of its falsity. Perjury offered under these circumstances is material if "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103 (1976).

   b. The Indiana Court of Appeals acknowledged the foregoing, but distinguished it from a case in which a witness gave contradictory or inconsistent testimony. *Brown II,* at p. 17 (citing *Timberlake v. State*, 690 N.E.2d 243, 253 (Ind. 1997)). The Indiana Court of Appeals then considered the portions of the record relied on by Brown to support this argument, and found in them "no perjury or significant inconsistency." *Id.* at 18.

   c. Brown has not carried his burden of showing that there was even error under *Napue*, and similarly has not shown that the decision of the Indiana Court of Appeals' conclusion on this claim is not entitled to controlling deference pursuant to § 2254(d) under the circumstances of this case.

  9. Brown's convictions withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to them. *See Farmer v. Litscher,* 303 F.3d 840, 845 (7th Cir. 2002) (citing *Parke v. Raley,* 506 U.S. 20, 29-30 (1992)); *Milone v. Camp,* 22 F.3d 693, 698-99 (7th Cir. 1994) ("Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law"). His petition for a writ of habeas corpus is accordingly denied, and this action is dismissed with prejudice. Judgment consistent with this Entry shall now issue.

  **IT IS SO ORDERED**.

Date: 05/25/2006

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana